UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| G.C. FRANCHISING SYSTEMS, INC. <br> 4755 Lake Forest Drive, Suite 100 <br> Cincinnati, Ohio 45242, <br><br> Plaintiff, <br><br> v. <br><br> DAVID S. KELLY, individually <br> 30 Old Forge Court <br> Sparks, Maryland 21152 <br><br> and <br><br> GROWTH SOLUTIONS, LLC <br> 30 Old Forge Court <br> Sparks, Maryland 21152 <br><br> Also Serve: David S. Kelly <br> Statutory Agent <br> 30 Old Forge Court <br> Sparks, Maryland 21152 <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 1:19cv00049 <br><br> Judge Timothy S. Black <br><br><br> <u>FIRST AMENDED COMPLAINT FOR</u> <br> <u>BREACH OF CONTRACT, FRAUD,</u> <br> <u>UNJUST ENRICHMENT,</u> <br> <u>ACCOUNTING, TRADEMARK</u> <br> <u>INFRINGEMENT, UNFAIR</u> <br> <u>COMPETITION, DECLARATORY</u> <br> <u>JUDGMENT AND PERMANENT</u> <br> <u>INJUNCTIONS</u> |

_____

Plaintiff G.C. Franchising Systems, Inc. ("Franchising Systems"), for its First Amended Complaint against Defendants David S. Kelly ("Kelly") and Growth Solutions, LLC (Kelly and Growth Solutions, LLC, are collectively referred to as "Defendants") states as follows:

## PARTIES

1. Plaintiff Franchising Systems, operating under the trade name GROWTH COACH, is an Ohio corporation with its principal place of business located at 4755 Lake Forest Drive, Suite 100, Cincinnati, Ohio 45242.

2. Franchising Systems franchises businesses that offer business coaching, management and personal development coaching and consulting services to business owners, business managers, executives and self-employed professional using the trademark GROWTH COACH (referred to herein as a "Growth Coach Franchise").

3. Defendant Kelly is an individual citizen and resident of the State of Maryland.

4. Defendant Growth Solutions, LLC is Maryland limited liability company organized by Defendant Kelly in 2013.

5. Defendant Kelly organized Defendant Growth Solutions, LLC for the purpose of providing executive and sales coaching services.

6. Defendant Growth Solutions, LLC's principal place of business is in Maryland.

7. Based upon information and belief, Defendant Kelly is the sole member of Defendant Growth Solutions, LLC.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Franchising Systems and the Defendants, and the amount in controversy exceeds $600,000.

9. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(2) because a substantial portion of the events and omissions giving rise to the claims alleged occurred in this district.

11. In addition, a Franchise Agreement signed by Defendant Kelly, a true and accurate copy of which was attached as Exhibit A to the complaint and is hereby incorporated by reference, contains the following provision regarding jurisdiction and venue:

> Each party agrees that the following courts have personal jurisdiction over it in all lawsuits between the parties and/or their affiliates, irrevocably submits to the jurisdiction of these courts, and irrevocably waives any defense based upon lack of personal jurisdiction in any lawsuit filed in these courts: . . . all courts of the United States of America sitting within the State of Ohio, including, without limitation, all United States District Courts within the State of Ohio. Each party agrees that venue shall be proper in any of the following courts in all lawsuits between the parties and/or their affiliates and irrevocably waives any right to transfer or change the venue in any lawsuit filed in these courts: . . . the United States District Court for the Southern District of Ohio, Western Division.

Franchise Agreement, section 18.4.

12. Growth Solutions LLC, upon information and belief, is the assignee of the Franchise Agreement. Growth Solutions, LLC is closely related to, wholly controlled by, and acting in concert with Defendant Kelly, was formed for the purpose of operating a Growth Coach franchised business, and is closely related to the contractual relationship at issue in this case and is, therefore, bound by the Franchise Agreement's forum selection clause.

## THE FRANCHISE AGREEMENT

13. On or about December 17, 2012, Defendant Kelly signed a Growth Coach franchise agreement designated "Growth Coach Franchise Agreement 75750" (referred to herein as the "Franchise Agreement"). The Franchise Agreement was for a term of 10 years.

14. On or about March 8, 2013, Defendant Kelly organized Defendant Growth Solutions, LLC for the purpose of operating his Growth Coach franchise. Defendant Kelly assigned ownership of the Franchise Agreement to Growth Solutions, LLC.

15. Pursuant to the Franchise Agreement, Franchising Systems licensed Defendant Kelly to operate a Growth Coach Franchise within a specific geographic territory specified in Exhibit B to the Franchise Agreement.

16. Pursuant to the Franchise Agreement, Franchising Systems licensed Defendant Kelly to use Franchising Systems' Marks. The Marks included the registered trademarks GROWTH COACH® and STRATEGIC MINDSET®, derivatives thereof, and other trade names and logos designated by Franchising Systems.

17. In section 5.1 of the Franchise Agreement, Defendants agreed to pay Franchising Systems "a monthly royalty fee of 8% of Franchisee's Gross Revenues (the 'Royalty'), or $500.00 per month (the 'Minimum Royalty'), whichever is greater."

18. Section 5.4 of the Franchise Agreement defines "Gross Revenues" as "all income (cash, credit, and all other consideration) received by Franchisee . . . (i) in connection with the operation of the franchised business or any competing business; (ii) from the sale of any authorized products or services (as modified from time-to-time by Franchisor in accordance with this Agreement); or (iii) from the sale of goods or services under, using, or in connection with the Marks."

19. Section 7.8 of the Franchise Agreement requires Defendants to submit monthly Revenue Reports identifying Defendants' Gross Revenues for the prior month and tax returns to Franchising Systems.

20. In section 5.3 of the Franchise Agreement, Defendants agreed to pay a late fee of $50.00 or 10% of the amount due, on any payment obligation that is not received by Franchising Systems within 5 days after the due date, and interest of 18% per annum

or the highest rate allowed by law, whichever is greater, on payments more than 30 days late.

21. In section 8.1 of the Franchise Agreement, Defendants agreed to operate their Growth Coach Franchise under the trade name GROWTH COACH and not to use any other trade name or trademark in connection with the Growth Coach Franchise without Franchising Systems' prior written consent.

22. In section 9.2 of the Franchise Agreement, Defendants agreed to treat Franchising Systems' confidential operations manual and all information therein as confidential and proprietary, to maintain such information as secret and confidential, and to not make the same available to any other party.

23. In section 10.1 of the Franchise Agreement, Defendants agreed not to disclose or use for the benefit of any other party, any confidential information, knowledge, or know-how concerning Growth Coach Franchise or the methods of operation that may be communicated to them by Franchising Systems.

24. In section 13.3 of the Franchise Agreement, Defendants agreed to pay Franchising Systems all damages, costs and expenses, including reasonable attorney fees, incurred by Franchising Systems as a result of any default that was not timely cured.

25. In sections 15.2(a), 15.2(b), 15.2(d) and 15.2(e) of the Franchise Agreement, Defendants agreed that they would not divert business to any competitor of a Growth Coach Franchise, provide aid or assistance to any competitor of a Growth Coach Franchise, or own, maintain, or have any interest in any business that competes with a Growth Coach Franchise during the term of the Franchise Agreement.

26. The above-described restrictions of section 15.2 of the Franchise Agreement are reasonably necessary to protect Franchising Systems' trademarks, trade names, goodwill, trade secrets and other legitimate business interests in the market in which the Defendants operate their Growth Coach Franchise.

27. In section 15.8 of the Franchise Agreement, Defendants agreed that a violation of section 15.2 "would result in irreparable injury to [Franchising Systems] for which no adequate remedy at law may be available; and [Defendants] accordingly consents to the issuance of, and agrees to pay all court costs and reasonable attorneys' fees incurred by [Franchising Systems] in obtaining, an injunction prohibiting any conduct by [Defendants] in violation of the terms of this Article 15."

28. In June 2013, Defendant Kelly, now the CEO and sole member of Growth Solutions, LLC, attended a one-week training program for new franchisees held at Franchising Systems' office in Cincinnati, Ohio, to learn the Growth Coach business model, business plans, and Franchising Systems' trade secrets for purposes of operating a Growth Coach Franchise.

29. During the training program, Defendants received access to the Growth Coach operations manual, which contains confidential and proprietary information about the operation of a Growth Coach Franchise.

30. Defendants opened and operated a Growth Coach franchised business that provided services using the name Growth Coach of Greater Baltimore.

31. On or about May 29, 2018, Defendants issued a press release stating that the Growth Coach of Greater Baltimore would be renamed Growth Solutions Team.

32. Defendants did not obtain Franchising Systems' consent to rename the Growth Coach of Greater Baltimore to Growth Solutions Team.

33. Defendants market the renamed business as "Growth Solutions Team (formerly known as Growth Coach of Greater Baltimore)".

34. Defendants claim that Growth Solutions Team is not a Growth Coach franchise.

35. Defendants continue to use Franchising Systems' Marks.

36. An issue of *Inc.* magazine issued in or about September 2018 identified the Growth Coach of Greater Baltimore as having $3,600,000 in revenue in 2017 and as having growth of 1,817% over a three-year period.

37. Franchising Systems investigated and discovered that Defendants had substantially underreported Gross Revenues. Defendants' underreporting of Gross Revenues resulted in a substantial underpayment of required Royalties.

38. Franchising Systems notified Defendants that they were in default of the Growth Coach Franchise Agreement for underpaying Royalties, underreporting Gross Revenues, failing to provide tax returns and required business records, and for using Franchising Systems' Marks in an unauthorized manner.

39. Defendants have refused to cure their defaults under the Franchise Agreement.

40. Franchising Systems has fully complied with all of its obligations under the Franchise Agreement.

## FIRST CLAIM FOR RELIEF
## <u>BREACH OF CONTRACT</u>

41. Franchising Systems incorporates paragraphs 1 through 40 of this Complaint as if fully restated herein.

42. Defendants have materially breached section 5.1 of the Franchise Agreement by failing to pay Franchising Systems the required Royalty.

43. Defendants have breached section 7.8 of the Franchise Agreement by failing to submit Revenue Reports accurately identifying Gross Revenues to Franchising Systems.

44. Defendants have breached section 7.8 of the Franchise Agreement by failing to submit Defendants' annual tax returns to Franchising Systems.

45. Defendants have materially breached section 8.1 of the Franchise Agreement by operating their Growth Coach Franchise under a trade name other than GROWTH COACH.

46. Defendants have breached section 8.8 of the Franchise Agreement by failing to disclose to Improvements to Franchising Systems, by failing to obtain Franchising Systems written approval prior to using the Improvements, and by taking steps to appropriate the Improvements for themselves.

47. Defendants have breached sections 9.2 and 10.1 of the Franchise Agreement by using Franchising Systems' business model, confidential information and trade secrets to operate a competing business at the same location as their Growth Coach Franchise.

48. Defendants have breached section 10.4 of the Franchise Agreement by failing to assign ownership of materials developed by Defendants to Franchising Systems.

49. Defendants have breached section 10.6 of the Franchise Agreement by failing to provide Franchising Systems with a Client List.

50. Defendants continue to be in default of the Franchise Agreement.

51. As a direct and reasonably foreseeable result of Defendants' breaches of the Franchise Agreement, Franchising Systems has and will continue to suffer damages in excess of $600,000.

SECOND CLAIM FOR RELIEF
FRAUD

52. Franchising Systems incorporates paragraphs 1 through 51 of this Complaint as if fully restated herein.

53. Defendants submitted Revenue Reports to Franchising Systems that intentionally and falsely understated Defendants' Gross Revenues.

54. The Revenue Reports submitted by Defendants indicated that Defendants never had more than $50,000 in annual Gross Revenues.

55. In 2017 alone, Defendants had annual Gross Revenues of over $3,000,000.

56. Franchising Systems justifiably relied upon on Defendants' material misrepresentations.

57. As a direct and proximate result of Defendants' fraud, Franchising Systems have suffered damages in an amount to be determined at trial, but not less than $600,000.

THIRD CLAIM FOR RELIEF
FAILURE TO COMPLY WITH IN-TERM
COVENANTS AGAINST COMPETITION

58. Franchising Systems incorporates paragraphs 1 through 57 of this Complaint as if fully restated herein.

59. Defendants have materially breached sections 15.2(a), 15.2(b), 15.2(d) and 15.2(e) of the Franchise Agreement by diverting business to a competitor of Defendants' Growth Coach Franchise, providing aid and assistance to a competing business, and owning, maintaining, and having an interest in a business that competes with their Growth Coach Franchise at the same location as their Growth Coach Franchise.

60. Defendants' failure and refusal to comply with these in-term covenants against competition constitute a material and ongoing breach of the Franchise Agreement.

61. As a direct and proximate result of Defendants' failure and refusal to comply with the Franchise Agreement's in-term covenants against competition, Franchising Systems is suffering and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing its wrongful acts, the harm to Franchising Systems will continue and increase.

62. Franchising Systems has no adequate remedy at law and is therefore entitled to injunctive relief, including a preliminary injunction, and an order of specific performance requiring Defendants to fulfill their contract obligations to Franchising Systems.

FOURTH CLAIM FOR RELIEF
UNJUST ENRICHMENT

63. Franchising Systems incorporates paragraphs 1 through 62 of this Complaint as if fully restated herein.

64. Defendants have retained money and or benefits that in justice and equity belong to Franchising Systems.

65. Franchising Systems has conferred benefits upon Defendants pursuant to the properly executed Franchise Agreement.

66. Defendants knew of the benefits and terms contained within the Franchise Agreement.

67. In failing to compensate Franchising Systems pursuant to the Franchise Agreement, Defendants have retained the financial benefits and circumstances where it would be unjust to do so without payment.

68. Franchising Systems has been damaged in excess of $600,000 as a result of Defendants' failure to pay the royalties and other amounts to which Franchising Systems is entitled under the Franchise Agreement.

FIFTH CLAIM FOR RELIEF
FAILURE TO COMPLY WITH CONFIDENTIALITY
RESTRICTIONS UNDER THE FRANCHISE AGREEMENT

69. Franchising Systems incorporates paragraphs 1 through 68 of this Complaint as if fully restated herein.

70. Section 10.3 of the Franchise Agreement states that "Franchisee shall require Principals, directors, officers, and management employees . . . to execute confidentiality agreements . . . requiring that all information being proprietary or confidential hereunder that may be acquired by or imparted to such persons in connection with their association with Franchisee be held in strict confidence and used solely for the benefit of Franchisee and Franchisor . . . . All confidentiality agreements described in this paragraph must include a specific identification of Franchisor as a third-party beneficiary with the independent right to enforce the agreement."

71. Defendants breached Section 10.3 of the Franchise Agreement by failing to require management level employees to sign the required confidentiality agreement.

72. As a direct and proximate result of this breach of the Franchise Agreement, Franchising Systems has suffered damages in an amount to be determined at trial, but not less than $600,000.

SIXTH CLAIM FOR RELIEF
<u>ACTION FOR ACCOUNTING</u>

73. Franchising Systems incorporates paragraphs 1 through 72 of this Complaint as if fully restated herein.

74. Section 5.1 of the Franchise Agreement requires Defendants to pay Franchising Systems a royalty equal to a specified percentage of their Gross Revenues.

75. The Franchise Agreement defines "Gross Revenues" as "all income (cash, credit, and all other consideration) received by Franchisee . . . (i) in connection with the operation of the franchised business or any competing business; (ii) from the sale of any

- 11 -

authorized products or services (as modified from time-to-time by Franchisor in accordance with this Agreement); or (iii) from the sale of goods or services under, using, or in connection with the Marks."

76. The services offered and provided by Defendants are offered and provided under, using, and in connection with the Marks.

77. Defendants receive income from the operation of a purportedly competing business and from the sale of authorized products and services.

78. Defendants have improperly diverted revenue away from the Growth Coach Franchise to a purportedly different business operated at the same location, thus depriving Franchising Systems of revenues owed to it.

79. A complete accounting of all revenues received by Defendants is necessary for Franchising Systems to receive the compensation to which it is entitled under the Franchise Agreement.

SEVENTH CLAIM FOR RELIEF
<u>TRADEMARK INFRINGEMENT</u>

80. Franchising Systems incorporates paragraphs 1 through 79 as if fully restated herein.

81. Franchising Systems owns and has registered the GROWTH COACH trademark with the United States Patent and Trademark Office, Reg. Nos. 2,436,120 and 3,514,588. The GROWTH COACH mark was first registered in 2001 and has been continuously used by Franchising Systems and its licensees since December 14, 2004.

82. Franchising Systems owns and has registered THE STRATEGIC MINDSET trademark with the United States Patent and Trademark Office, Reg. No. 2,876,669. THE STRATEGIC MINDSET mark was first registered on August 24, 2004 and has been continuously used by Franchising Systems and its licensees since then.

83. By virtue of their registration with the United States Patent and Trademark Office, the GROWTH COACH and THE STRATEGIC MINDSET trademarks are entitled to protection under the Trademark Act, 15 U.S.C. §§ 1051, *et seq.*

84. The Franchise Agreement grants Defendants the right to use Franchising Systems' trademarks only in connection with their operation of the Growth Coach franchise and as specifically permitted by the Franchise Agreement or by Franchising Systems in writing.

85. Under section 8.3 of the Franchise Agreement, Defendants agreed that any use of Franchising Systems' Marks outside the scope of the Franchise Agreement without Franchising Systems' prior written consent constitutes an infringement of Franchising Systems' rights in the Marks.

86. Defendants are using the GROWTH COACH and THE STRATEGIC MINDSET Marks in an unauthorized manner.

87. Defendants' use of Franchising Systems' registered trademarks is without authorization by Franchising Systems and constitutes willful infringement of the marks in violation of 15 U.S.C. § 1114.

88. Defendants' unlawful and continuing use of Franchising Systems' Marks was undertaken willfully and with the intention of causing confusion, mistake, or deception.

89. Defendants' acts of infringement of the Marks entitle Franchising Systems to recover such monetary relief to which it is entitled pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees, against Defendants.

90. By reason of the Defendants' conduct, Franchising Systems is suffering and will continue to suffer irreparable harm through misleading and confusing use of its

marks, and unless the Defendants are enjoined from continuing their wrongful conduct, the harm to Franchising Systems will continue and increase.

EIGHTH CLAIM FOR RELIEF
UNFAIR COMPETITION BY INFRINGEMENT OF COMMON LAW RIGHTS

91. Franchising Systems incorporates paragraph 1 through 90 as if fully restated herein.

92. Defendants' unauthorized use of Franchising Systems' Marks, including GROWTH COACH, STRATEGIC MINDSET, and the Growth Coach logo, constitutes unfair competition and an infringement of Franchising Systems' common law rights in its Marks.

93. Franchising Systems' Marks have been in existence and publicly advertised and displayed for all times relevant hereto and used by Franchising Systems to identify and distinguish its business coaching, management and consulting services, and executive and sales coaching services from such services provided by others.

94. Franchising Systems and its licensees have prominently displayed the marks on signage, bills, letterhead and brochures, in telephone directory, Internet and other advertising, and in periodicals distributed throughout in the United States, including the trade area where Defendants are doing business. Franchising Systems retains the exclusive right to use the Marks in commerce for the aforesaid services.

95. Defendants have and continue to willfully and wantonly infringe upon Franchising Systems' Marks as alleged herein with the intent to deceive and defraud the public into believing that services performed by Defendants are approved by, sponsored by, empowered by or affiliated with Franchising Systems and are the services of Franchising Systems or its authorized franchisees.

96. By reason of Defendants' conduct, Franchising Systems is suffering and will continue to suffer irreparable harm through misleading and confusing use of its marks,

and unless Defendants are enjoined from continuing its wrongful conduct, the harm to Franchising Systems will continue and increase.

### NINTH CLAIM FOR RELIEF
### REFUSAL TO COMPLY WITH TERRITORIAL RESTRICTIONS UNDER THE FRANCHISE AGREEMENT

97. Franchising Systems incorporates paragraphs 1 through 96 of this Complaint as if fully restated herein.

98. Defendants failed or refused to comply with the territorial restrictions of the Franchise Agreement by operating its Growth Coach franchise and using the Marks in franchise territories licensed to other franchisees of Franchising Systems and otherwise infringing on rights granted under franchise agreements between Franchising Systems and other Growth Coach franchisees.

99. Defendants' failure or refusal to comply with the territorial restrictions of the Franchise Agreement constitutes a material and ongoing breach thereof.

100. As a direct and proximate result of Defendants' failure or refusal to comply with the territorial restrictions of the Franchise Agreement, Franchising Systems is suffering and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing its wrongful acts, the harm to Franchising Systems will continue and increase.

101. Franchising Systems has no adequate remedy at law and is therefore entitled to injunctive relief, including a preliminary injunction, and an order of specific performance requiring Defendants to fulfill its contract obligations to Franchising Systems.

### TENTH CLAIM FOR RELIEF
### PERSONAL GUARANTY OF DAVID S. KELLY

102. Franchising Systems incorporates paragraphs 1 through 101 as if fully restated herein.

103. Pursuant to the Personal Guaranty executed simultaneously with the Franchise Agreement, Defendant Kelly is personally liable for the performance and all obligations under the Franchise Agreement.

104. Defendant Kelly has breached his obligations under the Personal Guaranty.

105. As a direct and proximate result of this breach of the Franchise Agreement, Franchising Systems has suffered damages in an amount to be determined at trial, but not less than $600,000.

ELEVENTH CLAIM FOR RELIEF
DECLARATORY JUDGMENT

106. Franchising Systems incorporates paragraphs 1 through 105 as if fully restated herein.

107. Pursuant to the Section 10.5 of the Franchise Agreement, Franchising Systems owns all Internet domain names and URLs relating to Defendants' Growth Coach franchise as well as all lists and information relating to Defendants' clients.

108. Defendants presently use the URLs www.growthcoachgreaterbaltimore.com and www.growthsolutionsteam.com in connection with providing services under the Marks and claims ownership of the URLs.

109. Pursuant to Section 8.8 of the Franchise Agreement, Defendants are required to disclose Improvements to Franchising Systems, to obtain Franchising Systems' written approval prior to using the Improvements, and to assign ownership of Improvements to Franchising Systems.

110. Defendants have failed to assign ownership of Improvements to Franchising Systems, failed to obtain Franchising Systems' written approval prior to using the Improvements, and by taking steps to appropriate the Improvements for themselves.

111. Pursuant to section 10.4 of the Franchise Agreement, Defendants are required to assign ownership of materials developed for use in their business to Franchising Systems.

112. Defendants have failed to assign ownership of materials developed for use in their business to Franchising Systems and claim ownership of the materials.

113. This action involves an actual controversy between Franchising Systems and Defendants, within the scope and meaning of 28 U.S.C. § 2201-2202.

114. Pursuant to the federal Declaratory Judgment Act (28 U.S.C. §2201, et seq.), Franchising Systems is entitled to a declaratory judgment that it is the rightful and proper owner of: (a) all Client Lists and client data obtained by Defendants in the operation of their business; (b) all URLS used by Defendants in the operation of their business, including www.growthcoachgreaterbaltimore.com and www.growthsolutionsteam.com; (c) all Improvements developed or acquired by Defendants; and (d) all materials developed by Defendants for use in the business.

115. Defendants' failure and refusal to comply with sections 8.8, 10.4, and 10.5 constitute a material and ongoing breach of the Franchise Agreement.

116. As a direct and proximate result of Defendants' failure and refusal to comply with section 8.8, 10.4, and 10.5 of the Franchise Agreement, Franchising Systems is suffering and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the harm to Franchising Systems will continue and increase.

117. Franchising Systems has no adequate remedy at law and is therefore entitled to injunctive relief, including a preliminary injunction, and an order of specific performance requiring Defendants to fulfill their contractual obligations to Franchising Systems.

WHEREFORE, Franchising Systems demands judgment against Defendants, jointly and severally:

A. Awarding to Franchising Systems compensatory damages in an amount to be determined at trial, which are believed to exceed $600,000, together with lawful interest thereon;

B. Awarding to Franchising Systems compensatory damages for Defendants' trademark infringement, including treble actual damages, costs, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117;

C. Permanently enjoining Defendants, their agents, servants, employees and all persons or entities acting for, with, by, through or under them, from using Franchising Systems' Marks in an authorized manner and from owning, maintaining, engaging in, or having any interest in any business that competes with a Growth Coach Franchise and requiring Defendants to fulfill their contractual obligations to Franchising Systems;

D. Ordering Defendants to file with the Court and serve upon Franchising Systems' counsel, no later than 30 days after entry of the foregoing injunctions, an affidavit setting forth in detail the manner and form in which Defendants have complied with the requirements of the injunctions;

E. A Declaratory Judgment that Franchising Systems is the rightful owner of: (1) all Client Lists and client data obtained by Defendants in the operation of their business; (2) all URLS used by Defendants in the operation of their business; (3) all Improvements developed or acquired by Defendants; and (4) all materials developed by Defendants for use in the business.

F. Awarding Franchising Systems punitive damages in an amount in excess of $100,000;

G.    Awarding to Franchising Systems its costs, disbursements, and attorney fees in this action; and

H.    Further awarding to Franchising Systems any such relief that this Court deems just and appropriate.

   /s/ William M. Gustavson
William M. Gustavson
Ohio Bar Number 0016674
Attorney for Plaintiff
1060 Nimitzview Drive, Suite 212
Cincinnati, Ohio 45230
Telephone: (513) 621-4477
E-Mail: wmg@gustavsonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jeffrey M. Nye, attorney for Defendants.

/s/William M. Gustavson
Ohio Bar Number 0016674
Trial Attorney for Plaintiff
1060 Nimitzview Drive, Suite 212
Cincinnati, OH 45230
(513) 621-4477
wmg@gustavsonlaw.com