UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **G.C. FRANCHISING SYSTEMS, INC.,** | Case no. 1:19-cv-00049 |
| Plaintiff, | Judge Timothy S. Black |
| v. | **REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER VENUE** |
| **DAVID KELLY, et al.,** | |
| Defendants. | |

The defendants' motion should be granted. The plaintiff's First Amended Complaint (doc. 7) does not cure any of the defects in the original complaint, so its filing does not moot the motion. The affidavit (doc. 8-1) attached to the plaintiff's memorandum in opposition (doc. 8) does not include evidence of any conduct of defendant Growth Solutions in or directed to the forum, so the Court must conclude that it lacks personal jurisdiction over Growth Solutions. Finally, the plaintiff's arguments about why Growth Solutions is subject to a contract to which it is not a party, and about why other claims should not be dismissed, are incorrect.

**I.      The First Amended Complaint does not moot the motion.**

The plaintiff responded to the defendants' motion by filing both a First Amended Complaint and a memorandum in opposition. The filing of an amended pleading typically supersedes the original pleading, and thus moots any pending motions directed to the original pleading. *See, e.g., Yates v. Applied Performance Techs., Inc.*, 205

1

F.R.D. 497, 499 (S.D. Ohio 2002). But that rule does not apply where the amended pleading does not "cure" the defect in the original pleading. Where the amended pleading suffers from the same defects as the prior pleading, the Court can and should consider the motion as applied to the amended pleading. *Id. See also Jordan v. City of Philadelphia*, 66 F.Supp.2d 638, 641 n.1 (E.D. Penn. 1999), citing 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 at 558 (2nd ed. 1990) (defendants "are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

As relevant to the motion, the First Amended Complaint has only two allegations not found in the original complaint. Paragraph 12 states "Growth Solutions LLC, upon information and belief, is the assignee of the Franchise Agreement," and that it "was formed for the purpose of operating a Growth Coach franchised business." *See* doc. 7, PAGEID # 115. And ¶14 now includes the statement that "Defendant Kelly assigned ownership of the Franchise Agreement to Growth Solutions, LLC." *See id.* at PAGEID # 116.[1]

These allegations are intended to address Growth Solutions' argument that it is

---

[1] The First Amended Complaint also makes some minor non-substantive spelling corrections, and adds a pair of formality allegations (at ¶104-105) that the plaintiff performed its obligations under a contract and that it was damaged as a result.

2

not a party to the Franchise Agreement. But for the reasons discussed below they are not materially different from the original complaint, and they are not sufficient to either salvage the breach of contract claims against Growth Solutions or establish personal jurisdiction over Growth Solutions.

**II.     The record fails to establish personal jurisdiction over Growth Solutions.**

GC Franchising Systems acknowledges that it has the burden of establishing personal jurisdiction over Growth Solutions, *see* Pl. Br., doc. 8, at 4, PAGEID # 135, but despite that concession it has made no effort to introduce into the record any evidence of any contacts between Growth Solutions and Ohio—much less evidence of sufficient contacts to make the exercise of jurisdiction reasonable under the Due Process Clause. It also has made no effort to show that Growth Solutions has purposefully availed itself of the privilege of doing business in Ohio. Instead, the only record evidence is that Growth Solutions has *no* contacts with Ohio, does *no* business in Ohio, and has never done *any* business in Ohio. The plaintiff thus has failed to establish that the court has personal jurisdiction over Growth Solutions.

Instead of engaging in the constitutionally required due-process analysis, the plaintiff hangs its hat on the argument that Growth Solutions is subject to personal jurisdiction here because David Kelly is. In particular, the plaintiff argues (1) that Kelly assigned the Franchise Agreement to Growth Solutions, (2) that Growth Solutions is bound by the Franchise Agreement because it is an "affiliate" of Kelly, and (3) that

3

Growth Solutions is the alter ego of Kelly (though the plaintiff does not use the term "alter ego"). All three of these arguments are wrong.

### A. Growth Solutions is not Kelly's assignee.

There are no factual allegations and there is no record evidence that Growth Solutions is the assignee of Kelly's rights or obligations under the Franchise Agreement. The plaintiff does allege, "upon information and belief," that such an assignment occurred. *See* First Am. Compl., doc. 7, at ¶12, PAGEID # 115. The plaintiff also asserts, in the affidavit of its former President, that its "usual business practice" is to allow an individual franchisee to assign his ownership to a corporation, and to do so "without [the plaintiff's] prior consent or formal notification." *See* Fabik Aff., doc. 8-1, at ¶7, PAGEID # 152-153.

But neither of these things establishes, even under a Rule 12 standard, that Growth Solutions is Kelly's assignee. The reason is that the Franchise Agreement itself expressly prohibits assignment without the prior written consent of the plaintiff. *See* Franchise Agreement, doc. 1-1, at §18.2, PAGEID # 63 ("This Agreement may not be assigned by [Kelly] without the prior written consent of [the plaintiff]."). It therefore does not matter what the plaintiff's "usual business practice" is, even if the usual practice is to allow informal assignments; in *this* case, prior written consent is required, and the plaintiff must make a showing both that an assignment actually occurred and that prior written consent was given.

4

Because an assignment must be approved by the plaintiff in writing, the evidence of whether the Franchise Agreement was assigned is entirely within the plaintiff's control, and it cannot be alleged to exist "upon information and belief." *See Germain v. Teva Pharms.*, 756 F.3d 917, 931 (CA6 2014) (*Twombly/Iqbal* plausibility-pleading requirement can be satisfied by alleging facts "upon information and belief," if ever, only when "the facts are peculiarly within the possession of the defendant"), citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (CA2 2010). Instead, the plaintiff was required to plead actual facts. It did not.

The plaintiff's failure to allege affirmatively that an actual, valid assignment occurred is especially striking in light of the affidavit of Mr. Fabik (doc. 8-1), the plaintiff's former President. While the affidavit has lots of specifics about lots of things (most of which are not germane to this motion), one thing it lacks is any evidence of an assignment upon the plaintiff's prior written consent. In fact, not only does the affidavit lack any evidence of an assignment upon prior written consent, but it actually lacks any evidence of any assignment *at all*, with or without consent, in any form, at any time. Whatever the affidavit might say about usual business practices of the plaintiff—which is not even relevant to the question of *Growth Solutions'* contacts with Ohio; *see* Motion, doc. 6, at 6-8, PAGEID # 96-98 (discussion of *Walden v. Fiore*, 571 U.S. 277, 287, 290 (2014))—it is completely silent about the assignment of this specific Franchise Agreement. The affidavit does not even go so far as to parrot the First Amended

5

Complaint's statement that there was an assignment "upon information and belief." The Fabik affidavit merely describes a business practice that is not applicable to this particular case, and offers no facts at all about any assignment from Kelly to Growth Solutions, nor about any contacts between Growth Solutions and Ohio.

The absence of facts establishing an assignment is fatal to the plaintiff's argument. It is axiomatic that in order for a factual allegation to be construed in a party's favor, that factual allegation first must actually be made in the pleadings. Just the same, in order to draw a reasonable inference in favor of a party from a fact, that fact must appear in the record. Here, Growth Solutions failed to allege (in each of its first two complaints) any facts showing that an assignment from Kelly to Growth Solutions actually occurred. Then, despite adding to the record an affidavit of its former President, Growth Solutions failed to aver that there was, and failed to introduce any documentary evidence of, any assignment from Kelly to Growth Solutions. The only plausible conclusion from the pleadings and evidence is that the plaintiff has failed to meet its burden of showing that there was an assignment; its "upon information and belief" allegation is insufficient as a matter of law.

The plaintiff also argues that Growth Solutions must be Kelly's assignee because §7.10 of the Franchise Agreement *requires* Kelly to assign the agreement to a corporate entity. This argument fails for at least four reasons. First, that is not what §7.10 says. Section 7.10—see doc. 1-1, PAGEID # 34—says that a franchisee is required to "form a

6

business entity (such as a corporation or limited liability company) for the purpose of operating the franchised business," and that "Such business entity shall comply with the requirements of subparagraphs (a) through (k) below." Neither §7.10 nor subparagraphs (a) through (k) say anything whatsoever about assigning the agreement. Meanwhile, as discussed above, assignment is expressly covered and generally prohibited by §18.2 of the agreement. When the agreement is read as a whole, no reasonable factfinder could conclude that §7.10 requires, or even allows, an assignment.

Second, even if §7.10 requires some post-execution assignment, that doesn't mean that the assignment actually occurred. It just as easily could have been overlooked, forgotten, or even intentionally unobserved. Put differently, even accepting the plaintiff's interpretation of §7.10, that neither satisfies nor removes the plaintiff's evidentiary burden, and the pleadings and record include no evidence that an assignment occurred.

Third, even if a post-execution assignment occurred, there is nothing in the pleadings or record to show that any assignment was made *to Growth Solutions*.

Finally, while the plaintiff argues that Growth Solutions was formed after Kelly signed the Franchise Agreement, and thus it must have been formed for the purpose of being Kelly's assignee, per §18.2 the "Effective Date" of the Franchise Agreement is the date plaintiff signed it—May 1, 2013. *See* doc. 1-1, PAGEID # 66. This is some two months after Growth Solutions was formed. *See* doc. 6-1, at ¶2, PAGEID # 111. If the

7

parties had intended Growth Solutions to be bound by the Franchise Agreement, they could have, should have, and would have made it a party.

The only reasonable conclusion that can be drawn from these pleadings and this record is that Kelly did not assign the franchise agreement to Growth Solutions.

## B. Growth Solutions is not bound as an "affiliate.

The plaintiff's next argument is that Growth Solutions is bound by the Franchise Agreement even though it is not a party to that contract because it is an "affiliate" of Kelly; the forum-selection clause obligates both Kelly and his "affiliates" to litigate in Ohio. There are several problems with this argument.

First, the term "affiliates" is not defined under the Franchise Agreement, and nothing in that contract suggests that the term was intended to apply to every LLC of which David Kelly is or was a member or officer.

Second, the plaintiff acknowledges that Growth Solutions did not even exist when Kelly signed the Franchise Agreement in December 2012. The plaintiff also concedes that Growth Solutions *did* already exist when the *plaintiff* signed the Franchise Agreement in May 2013. If the plaintiff had wanted Growth Solutions to be bound by the Franchise Agreement, it could have and should have asked Growth Solutions to sign a Franchise Agreement. By its own admission it did not.

Third, the plaintiff's claim that Growth Solutions is an "affiliate" of Kelly for purposes of this clause is nothing more than an effort to backdoor its way out of its

8

failure to establish that Growth Solutions was Kelly's assignee. If the plaintiff were right that Kelly was required to assign the Franchise Agreement to Growth Solutions, then the "affiliates" language in the forum-selection clause would not be necessary. And if the "affiliates" language in the forum-selection clause (and elsewhere) bound non-assignees like Growth Solutions, then any assignment rules or restrictions are meaningless. Either way, the plaintiff's argument is internally inconsistent.

Fourth, and perhaps most importantly, the plaintiff's argument is inconsistent with fundamental legal principles about corporate personhood and identity. An LLC "exists as an entity separate from its members" for all purposes, even when the LLC has only one member, *Trickett v. Masi*, Ohio App. 11th Dist., 2018-Ohio-4270, ¶19, and the action of a sole member is not attributable to the LLC (nor vice versa). Whether a contract is made on behalf of a corporate entity or its individual member or officer "depends upon the form of the promise and the form of the signature." *R.C.H. Co. v. Classic Car Auto Body & Frame, Inc.*, Ohio App. 8th Dist., 2004-Ohio-6852. If there is "a discrepancy between the two," then "the form of the signature controls over the form of the promise." *Marhofer v. Baur*, Ohio App. 9th Dist, 101 Ohio App.3d 194, 197-198 (1995). Here, the form of the signature on the Franchise Agreement is clear—it is executed on behalf of David Kelly personally. The signature page (PAGEID # 66) and the "Identification of Franchisee(s)" page (PAGEID # 68) list Kelly as the franchisee in his

9

"individual" capacity; the half-page section to identify any "organizational franchisee" on the latter page is completely blank.

### C. Growth Solutions is not Kelly's alter ego.

Finally, the plaintiff argues that Growth Solutions is bound by Kelly's forum-selection clause because it is a "closely related non-signatory" to the Franchise Agreement. The trouble here is that this argument is inconsistent with Ohio law regarding "alter ego" liability—a doctrine that is not even identified in the plaintiff's brief, which relies almost exclusively on cases from outside Ohio. Even the Sixth Circuit case the plaintiff cites (*Baker v. LaBoeuf, Lamb, Leiby & Macrae*) is a decision affirming the district court's determination that the forum-selection *did not* apply to a non-signatory.

This concept closely dovetails with the ideas of "affiliates" and the "form of the signature" rule discussed above. Courts applying Ohio law (which controls the Franchise Agreement; *see* doc. 1-1 at §18.3, PAGEID # 63) regularly hold that when a contract is signed by the principal of a corporation (even the sole owner) but not the corporation itself, or when a document is signed by a corporation (even one that has only a single owner) but not the principal himself, only the signatory is bound. *See, e.g., WashPro Express, LLC v. VERwater Environmental, LLC*, Ohio App. 12th Dist., 2007-Ohio-910, ¶7-10 (affirming refusal to enforce forum-selection clause in contract between VERwater and WashPro, Inc., in case filed by WashPro Express, LLC; even though WashPro, Inc., installed VERwater's system in two WashPro Express facilities, WashPro

10

Express was not a party to the contract, so forum-selection clause was enforceable only if record contained evidence that WashPro, Inc., was acting as agent of WashPro Express when it signed contract; no such evidence in record); *Cupside Props., Ltd. v. Earl Mechanical Servs., Inc.*, Ohio App. 6th Dist., 2015-Ohio-5019, ¶8, 22-24 (forum-selection clause in contract with Community ISP, Inc., not enforceable against Cupside Properties Ltd. even though one entity was landlord, one was tenant, and both entities had common owner); *Schneider v. Shafran*, Ohio App. 1st Dist., 2013-Ohio-380 ¶12 (Shafran not personally bound to arbitration provision in contract he executed as president of Forest Park, Inc.).

Whatever other jurisdictions may hold about a "closely related parties" doctrine, Ohio requires a formalist assessment of who signed an agreement and in which capacity they signed. Here, only David Kelly executed the Franchise Agreement, and so only he is bound by it. If the parties had intended for Growth Solutions—which already existed on the Franchise Agreement's "Effective Date"—to be bound as well, they could have and should have (indeed, *must have*) said so. They did not.

**III. The individual counts still fail to state claims upon which relief can be granted.**

    **A. Growth solutions cannot have breached a contract to which it was not a party.**

The only argument the plaintiff makes for why counts one, three, five, and nine—all breach of contract claims—should not be dismissed as to Growth Solutions is that the First Amended Complaint alleges that Kelly assigned the Franchise Agreement

11

to Growth Solutions. *See* Pl. Br., doc. 8, at 14, PAGEID # 145.[2] This argument fails for the same reasons discussed in Part II.A above—Growth Solutions is not Kelly's assignee, and it cannot be liable for a breach of a contract to which it is not a party.

    **B.**    **Growth solutions is not liable for fraud because it has no duty to disclose, and because it would be unreasonable as a matter of law to rely on the representation of a stranger.**

The plaintiff has conceded that the fraud claim against Kelly should be dismissed because, absent the Franchise Agreement, Kelly has no duty to disclose any information. The fraud claim is thus duplicative of the breach of contract claims based on the Franchise Agreement. *See* Pl. Br., doc. 8, at 15, PAGEID # 146.

As to Growth Solutions, the plaintiff argues that it has properly pleaded that Growth Solutions intentionally misrepresented information to the plaintiff and that the plaintiff reasonably relied on that information to its detriment. But as explained in the motion, a fraud claim cannot be maintained in the absence of any duty of disclosure. The First Amended Complaint contains no allegation, and the affidavit record contains no evidence, establishing any duty of disclosure from Growth Solutions to the plaintiff, and the fraud claim therefore fails. This can also be framed as a rule about reliance. One element of a fraud claim is that the plaintiff must have reasonably relied on the

---

[2] The plaintiff's brief at this page actually identifies this argument as applying to counts one through six and nine through eleven, but most of those counts are not breach of contract claims, so assignment has nothing to do with them. The plaintiff also goes on to make a separate argument as to the non-contract claims in the rest of the brief, so the defendants presume that the plaintiff is only referring to counts one, three, five, and nine.

representation, but even assuming that Growth Solutions (rather than Kelly) made any representations to the plaintiff, it would be unreasonable as a matter of law for the plaintiff to rely to its detriment on any such disclosures, because Growth Solutions is a complete stranger to the plaintiff.

### C. Growth Solutions is not liable for unjust enrichment because it did not induce the plaintiff to confer any benefit.

The plaintiff concedes that the unjust enrichment claim against Kelly should be dismissed because of the existence of the express contract (the Franchise Agreement). *See* Pl. Br., doc. 8, at 16 n. 10, PAGEID # 147.

It also must be dismissed with respect to Growth Solutions. The plaintiff does not dispute that Ohio law generally holds that a third party (like Growth Solutions) is not liable in unjust enrichment based on the alleged failure of performance of a contractual counterparty (like Kelly). It argues only that "There is an exception to this rule . . . when the conferral of the benefit was the result of fraud, misrepresentation, or bad faith on the part of the party retaining the benefit." Pl. Br., doc. 8, at 15, PAGEID # 146.

That exception does not apply to the facts as pleaded in the First Amended Complaint. The case the plaintiff cites for the controlling principle of law—*National City Bank v. Fleming*, Ohio App. 8th Dist., 2 Ohio App.3d 50 (1981)—determined that there was no liability in unjust enrichment. *See id.* at 58. The plaintiff cites no cases that discuss the application of this exception and does not explain why it would apply here.

13

The proper application of the exception is seen in *Costanzo v. Stewart*, Ariz. App., 453 P.2d 526 (1969), which is the case *Fleming* cites for the existence of the exception, and which is focused on whether the defendant induced the plaintiff to confer the benefit. In *Fleming*, a homeowner hired a general contractor to install or repair a driveway. The general contractor hired a subcontractor to work on the curbs. *Id.* at 527. Before agreeing to do the curb work, the subcontractor "spoke to the property owner, Mr. Costanzo, who assured him the money for the job was in escrow and that he would write a check to him and [the general contractor] when the job was finished and passed by City Inspectors." *Id.* The sub did the work; the check was written; the check bounced. *Id.* The subcontractor sued the homeowner for unjust enrichment—and won. The court reasoned that the homeowner "knew [the subcontractor] was concerned about his payment and [the homeowner] assured [the sub] escrow arrangements had been made." *Id.* at 528-529. The court focused on the fact that while the subcontractor only had a contract with the absconding general contractor, the homeowner induced the sub to do the work by representing that funds were escrowed. In other words, but for the homeowner's inducement, the subcontractor would not have done the work. The subcontractor thus had a valid claim for unjust enrichment. *Id.* at 529.

Nothing like that is alleged to have happened here. There is neither allegation nor evidence that the plaintiff was induced to confer the benefit—to grant the franchise—based on anything that Growth Solutions did (much less based on anything

14

*fraudulent* that Growth Solutions did). The fraud is not alleged to be a hidden-ball or shell game in which the true contractual counterparty was concealed from the plaintiff—the fraud is alleged to be an understatement of revenues. Similarly, the fraud is not alleged to have occurred prior to or contemporaneously with the plaintiff conferring the benefit such that it would have induced the plaintiff to confer the benefit—the fraud is alleged to have occurred in 2017, a full four years after the Effective Date of the Franchise Agreement. *See* First Am. Compl., doc. 7, at ¶36, PAGEID # 119.

The exception does not apply because Growth Solutions did not induce the plaintiff to confer the benefit. Both defendants are entitled to judgment as a matter of law.

### D. Ohio law does not recognize a claim for accounting.

In response to the defendants' argument that count six's claim for accounting should be dismissed because it is an equitable remedy, the plaintiff argues that the defendants gave an incomplete description of the relevant law. Specifically, they argue that the defendants' description of an accounting as a remedy (rather than a claim) is true "only where there is an adequate remedy at law." Pl. Br., doc. 8, at 16, PAGEID # 147. That is not an accurate statement of the law. An accounting is always an equitable *remedy* that might be imposed if a party prevails on a tort; it is never a *claim* in and of itself. Even the cases the plaintiff cites expressly say this: the full passage in the first case

says that "Ohio law has consistently held that where there is an adequate remedy at law, an equitable remedy is improper. *An accounting is an equitable remedy.*" *McNulty v. Pls Acquisition Corp.*, Ohio App. 8th Dist., 2002-Ohio-7220, ¶80 (emphasis added; citations omitted). The second case says that "Regarding Cynergies' claim for an accounting, it is well settled that where a plaintiff seeks an accounting in order to ascertain the amount due and thereafter attain judgment, the action is one in law, not equity. Furthermore, the discovery process provides adequate means to obtain the same information sought through an accounting in the case sub judice. Therefore, *the trial court did not err when it dismissed Cynergies' claim for an accounting.*" *Cynergies Consulting, Inc. v. Wheeler*, Ohio App. 8th Dist., 2008-Ohio-3362, ¶30 (emphasis added; citations omitted).

      The significance of an adequate remedy at law is simply that Ohio courts do not grant equitable remedies (accountings; injunctions; specific performance; rescission; constructive trusts; etc.) where legal remedies (chiefly damages) are available. As the defendants wrote in their brief, it is theoretically possible that if the plaintiff prevails on a tort claim, the Court might direct an accounting as a remedy or partial remedy. And if the Court had jurisdiction over Growth Solutions the plaintiff may be entitled to discover information that resembles that which would be obtained through an accounting. But those questions have nothing to do with whether an accounting is itself a claim for relief. It is not, and count six must be dismissed against both defendants.

16

> **E.     The personal guaranty is duplicative of the Franchise Agreement because it creates no liabilities or obligations not already included in the Franchise Agreement.**

The plaintiff makes two arguments with respect to count ten's claim against Kelly under a personal guaranty. The first is that it is not duplicative of all the breach of contract claims against Kelly because if Kelly assigned the Franchise Agreement to Growth Solutions, then suddenly the guaranty is not duplicative. This fails both because Kelly did not assign the Franchise Agreement (as discussed at length above), and because even if Kelly had assigned his *duties* under the Franchise Agreement to Growth Solutions, nothing suggests that he did (or even *could*) assign his *liability* under the Franchise Agreement to Growth Solutions. That is, an assignment of the Franchise Agreement still would not make the guaranty necessary.

The plaintiff's other argument is that "mere 'duplication' between contracts is not a basis for dismissal on the pleadings. There is nothing that prevents a defendant from being subject to two separate agreements even if claims under the two agreements are duplicative." Pl. Br., doc. 8, at 17, PAGEID # 148. This argument overlooks the fact that the Franchise Agreement and the guaranty are not "two separate agreements." Per §18.1 of the Franchise Agreement, they are one single fully-integrated agreement. And the guaranty adds no *new* liability to whatever liability (if any) that Kelly already has under the rest of the Franchise Agreement. It therefore is duplicative and must be dismissed.

### F. There is no "actual controversy" about which the Court can declare rights.

Finally, the plaintiff argues that count eleven should not be dismissed because there is an ongoing controversy over ownership of certain information related to the business. The plaintiff may be correct that there is an ongoing controversy between it and Kelly over ownership of certain information, though if so, it is not clear from the pleadings precisely what that is. But Growth Solutions' motion and the plaintiff's brief make particular reference to web sites. These are not properly the subject of a declaratory judgment action for two reasons. First, they are expressly identified as *Growth Solutions'* web sites. Growth Solutions is not a party to the Franchise Agreement, and thus there can be no "actual controversy," as 28 USC 2201(a) requires,[3] over whether Growth Solutions is required to transfer ownership of the web sites. Second, while the plaintiff argues that the web sites in question are clearly "Improvements" based on the definition in the last sentence of §8.8 of the Franchise Agreement, that sentence limits "Improvements" to "Web sites . . . developed by Franchisee for the franchised business . . . ." Franchise Agreement, doc. 1-1, at §8.8, PAGEID # 42. "Franchisee" is defined in the Franchise Agreement as David Kelly, individually; Growth Solutions is not "Franchisee." *See* Franchise Agreement, doc. 1-1, at Exhibit A ("Identification of Franchisee(s)"), PAGEID # 68; *supra* Part II.B. The web sites in

---

[3] Much less an "actual controversy within [this Court's] jurisdiction," as the statute says.

question are self-evidently *Growth Solutions'* web sites, not Kelly's. Because only *Kelly* owes any obligations to the plaintiff with respect to either web sites or "Improvements," there is no actual controversy between the plaintiff and *Growth Solutions* with respect to either web sites or improvements, and Growth Solutions is entitled to judgment on the pleadings on this declaratory judgment claim.

**IV.    Venue is not proper in the Southern District of Ohio.**

The plaintiff appears to concede that if Growth Solutions is not the assignee of Kelly, then venue is not proper in the Southern District of Ohio. It makes no other arguments addressing venue, and instead simply reasserts that Growth Solutions is Kelly's assignee. Because that is not supported by the pleadings, and for the reasons discussed in Part IV of the defendants' motion, *see* doc. 6, at 16-19, PAGEID # 105-108, if the claims against Growth Solutions are not dismissed for failure to state a claim, they should be dismissed for improper venue.

Also, above and beyond the lack of merit to the "assignee" argument, the plaintiff ignores the fact that even if Growth Solutions were an assignee of the Franchise Agreement, transfer of venue still would be appropriate under 28 USC §1404(a) for the reasons set forth in the defendants' motion. In essence, nearly all of the relevant evidence for these claims resides in the District of Maryland, and venue should be transferred there for the convenience of the parties and (especially) the non-party witnesses.

**V.     Conclusion**

The plaintiff has conceded that counts two (fraud) and four (unjust enrichment) against Kelly should be dismissed for failure to state a claim. The court should also dismiss counts six, ten, and eleven against Kelly for the reasons discussed above.

The Court should dismiss Growth Solutions for lack of personal jurisdiction. Alternatively, it should dismiss all claims against Growth Solutions except counts seven and eight, and then should either dismiss those claims for improper venue or transfer venue to the District of Maryland.

                                        Respectfully submitted,

                                        */s/ Jeffrey M. Nye*
Jeffrey M. Nye (0082247)
    *Trial attorney*
Paul T. Saba (0063723)
Stagnaro, Saba & Patterson Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6714
(513) 533-2999 – fax
jmn@sspfirm.com
**Counsel for defendants**

## Certificate of Service

I certify under Rule 5(b)(2)(E) that a copy of this filing was served on all counsel through the court's electronic filing system on the date of filing.

                                        */s/ Jeffrey M. Nye*
Jeffrey M. Nye (0082247)