**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| G.C. FRANCHISING SYSTEMS, INC., *et al.*, | : : : | Case No. 1:19-cv-49 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| DAVID KELLY, *et al.*, | : : | |
| Defendants. | : : | |

**ORDER DENYING IN PART AND GRANTING IN PART**
**DEFENDANTS DAVID KELLY AND GROWTH SOLUTION LLC'S**
**MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE (Doc. 6)**

This civil case is before the Court on Defendants David Kelly and Growth

Solutions LLC's motion to dismiss for lack of personal jurisdiction, for failure to state a

claim upon which relief can be granted, and/or for improper venue (Doc. 6), and the

parties' responsive memoranda (Docs. 8, 10).  Alternatively, Defendants request this

Court transfer the case to the District of Maryland.

## I.  BACKGROUND

### A.    Factual Background

Plaintiff G.C. Franchising Systems, Inc., which operates under the name Growth

Coach, is an Ohio corporation with a principal place of business in Ohio.    (Doc. 7 at

¶ 1).  Defendant David Kelly, a Maryland resident, is the sole member of Defendant

Growth Solutions LLC ("Growth Solutions") (collectively, "Defendants"). (*Id.* at ¶¶ 3–7). Growth Solutions is a Maryland resident. (*Id.*).[1]

Plaintiff is a franchised business, offering business coaching, management and personal development programming, and consulting services. (*Id.* at ¶ 2). On or around December 17, 2012, Kelly, individually, signed an agreement with Plaintiff (the "Agreement") to own and operate one of Plaintiff's franchises (the "Franchise"). (*Id.* at ¶ 13; *see also* Doc. 1-1). The Agreement has a term length of ten years and contains a forum selection clause, which provides:

> 18.4 Jurisdiction and Venue. . . . each party hereby irrevocably agrees that all lawsuits between the parties and/or their affiliates shall be litigated only in courts having situs in Hamilton County, Ohio. Each party agrees that the following courts have personal jurisdiction over it in all lawsuits between the parties and/or their affiliates, irrevocably submits to the jurisdiction of these courts, and irrevocably waives any defense based upon lack of personal jurisdiction in any lawsuit filed in these courts: . . . all courts of the United States of America sitting within the State of Ohio, including, without limitation, all United States District Courts within the State of Ohio. Each party agrees that venue shall be proper in any of the following courts in all lawsuits between the parties and/or their affiliates and irrevocably waives any right to transfer or change the venue in any lawsuit filed in these courts . . . the United States District Court for the Southern District of Ohio, Western Division.

(Doc. 1-1 at § 18.4) (*See also* Doc. 7 at ¶ 11).

After signing the Agreement, on or around March 8, 2013, Defendant Kelly formed Defendant Growth Solutions with the purpose of operating the Franchise. (*Id.* at

---

[1] *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("The general rule is that all unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member.").

¶ 14). In June 2013, Kelly attended a one-week franchisee training program with Plaintiff, in Cincinnati, Ohio, during which he received access to confidential and proprietary information about the operation of the Franchise. (*Id*. at ¶¶ 28–29). Defendants Kelly and Growth Solutions then opened and operated the Franchise under the name "Growth Coach of Greater Baltimore." (*Id*. at ¶ 30). On or around May 29, 2018, without Plaintiff's consent, Defendants renamed the business to "Growth Solutions Team," marketing the businesses as "formerly known as Growth Coach of Greater Baltimore." (*Id*. at ¶¶ 31–33).

According to Plaintiff, Defendants contend that "Growth Solutions Team" is a not associated with the Franchise. (*Id*. at ¶ 34). However, Defendants continue to use Plaintiff's marks. (*Id*. at ¶ 35). Moreover, according to Plaintiff, Defendants have underpaid required royalties under the Agreement and have refused to cure defaults under the Agreement. (*Id*. at ¶¶ 36–39).

### B. Procedural History

On January 22, 2019, Plaintiff filed the instant action, asserting claims against Kelly and Growth Solutions for: (1) breach-of-contract; (2) fraud; (3) failure to comply with in-term covenants against competition; (4) unjust enrichment; (5) failure to comply with confidentiality restrictions under the agreement; (6) accounting, (7) trademark infringement, (8) unfair competition; (9) refusal to comply with territorial restrictions under the franchise agreement; and (10) personal guaranty. (*See id*.). Plaintiff also seeks a declaratory judgment (Count 11). (*Id*.).

In response to the original complaint, Growth Solutions and Kelly filed a combined motion to dismiss. (Doc. 6). Growth Solutions argues that complaint should be dismissed for lack of personal jurisdiction and/or improper venue. (*Id*.). Growth Solutions also argues that Plaintiff fails to state a claim against it for all claims except trademark infringement and unfair competition. (*Id*. at 10–16). Alternatively, Growth Solutions argues that the claims against it should be transferred to the District of Maryland. (*Id*. at 19-20). Kelly argues that certain claims should be dismissed because Plaintiff fails to state a claim against him for fraud, unjust enrichment, accounting, personal guaranty, and declaratory judgment. (*Id*.).

On April 19, 2019, in response to the motion to dismiss, Plaintiff filed an Amended Complaint. (Doc. 7). Then, on April 23, 2019, Plaintiff filed a response in opposition to the motion to dismiss. (Doc. 8). Defendants filed their reply in support of their motion to dismiss on May 13, 2019. (Doc. 10). Because the Amended Complaint is nearly identical to the original complaint, Defendants' purported deficiencies with the complaint still exist, and all parties continued briefing on the motion to dismiss, the Court will construe the motion to dismiss (Doc. 6) and responsive memoranda (Docs. 8, 10) as directed at the Amended Complaint.[2]

---

[2] It is true that "the filing of an amended complaint generally moots a pending motion to dismiss." *Rainey v. Patton*, No. 1:11CV327, 2011 WL 5239241, at *2 (S.D. Ohio Sept. 26, 2011), *report and recommendation adopted*, No. C-1-11-327, 2011 WL 5239237 (S.D. Ohio Nov. 1, 2011) (citing *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002). However, "'[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." *Yates*, 205 F.R.D. at 499 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed.1990)).

## III. PROPER FORUM

Growth Solutions argues that the Amended Complaint should be dismissed because: (1) this Court cannot exercise personal jurisdiction over Growth Solutions; or (2) for improper venue. (*See generally*, Doc 6). Alternatively, this action should be transferred to the District of Maryland pursuant to 28 U.S.C. § 1404(a). (*Id*. at 19–20). Plaintiff contends that Growth Solutions is bound by the Agreement's forum selection clause and, based on the forum selection clause, the proper forum is this Court. (Doc. 8 at 4–13). Growth Solutions opposes this argument, asserting that because it is not a signatory to the Agreement, it cannot be bound by the Agreement. (Doc. 10 at 3–11).

### A.      Application of the Forum Selection Clause

As an initial matter, the Court must determine if the forum selection clause in the Agreement applies to Growth Solutions as a non-signatory. The enforceability of a contract's forum selection clause is governed by federal law, not state law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) ("[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause.").

"[A] non-signatory to a contract may be bound by a forum selection clause in that contract if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997).

> In sum, it is clear from these cases that courts considering this question of whether a non-signatory may be bound by a forum selection clause take a <u>common sense, totality of the circumstances approach</u> that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. As noted above, this approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute. The question, then, is whether, in light of all of the circumstances of this case and what should have been reasonably foreseeable to [Growth Solutions], it is fair and reasonable to conclude that [Growth Solutions] is sufficiently "closely related" to the parties to the [Agreement] that [Growth Solutions] should be bound by the forum selection clause.

*Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010) (collecting and discussing cases on forum selection clauses and non-signatories) (emphasis added).  *See also Mahan v. Core Values Roadside Serv.*, LLC, No. 1:19-CV-480 (WOB), 2020 WL 1291589, at *4 (S.D. Ohio Mar. 18, 2020) (holding non-signatory bound by forum selection clause).

In this case, Growth Solutions is "closely-related" to Kelly and should be bound by the Agreement's forum selection clause.

It is undisputed that Kelly, not Growth Solutions, is the Agreement's signatory.  It is further undisputed that Kelly is the sole member of Growth Solutions.  As alleged by Plaintiff, Kelly created Growth Solutions to operate his franchise.  Moreover, in June 2013, Kelly (already sole member of Growth Solutions) attended a one-week franchisee training in Cincinnati, Ohio.  (*Id*. at ¶ 28).  Defendants then owned and operated the Franchise, named "Growth Coach of Greater Baltimore," for around six-years.  (*Id*. at

¶ 30).  When Defendants decided to rename their business and cut ties from Plaintiff, it was marketed "Growth Solutions Team (formerly known as Growth Coach of Greater Baltimore)."  (*Id*. at ¶ 33).  Growth Solutions Team also marketed a "Strategic Mindset process," which allegedly uses confidential and proprietary information of and infringes upon Plaintiff's "Strategic Mindset® program."  (Doc. 8-1 at 3–4).

Thus, common sense and a totality of the circumstances dictate that the forum selection clause applies to Growth Solutions.  It should have been "reasonably foreseeable" to Growth Solutions, and its sole member Kelly, that Growth Solutions is so "closely-related" to Kelly and his Agreement with Plaintiff, that Growth Solutions would be bound by the Agreement.

### B.   Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction.  *Mich. Nat'l Bank v. Quality Dinette, Inc*., 888 F.2d 462, 466 (6th Cir. 1989).  When deciding whether personal jurisdiction exists, a court has discretion to hold a hearing or to rely on the affidavits and factual allegations in the pleadings.  *Id*.  Where, as here, the court relies solely on written submissions and declarations, plaintiffs "need only make a *prima facie* showing of jurisdiction."  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  Nevertheless, if the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise[,]...specific facts showing that the court has jurisdiction."  *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  A court

must construe the facts presented in the pleadings and affidavits in the light most favorable to the nonmoving party. *See Serras*, 875 F.2d at 1214.

Moreover, "'[t]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citing *Kennecorp Mortgage Brokers, Inc. v. Country Club Convalescent Hospital, Inc.*, 66 Ohio St.3d 173, 610 N.E.2d 987, 988 (Ohio 1993)). "The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

"In determining the validity of a particular forum selection clause, we thus consider the following factors: (1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust." *Id.* (citations omitted).

Here, this Court has already found that Growth Solutions is bound by the forum selection clause; thus, the next step is to determine if the forum selection clause is valid. In this instance, it is valid.

First, the Agreement is clearly commercial in nature, as a for-profit contract that allows Defendants to operate the Franchise and license Plaintiff's business coaching and consulting programs. Second, Defendants offer no evidence of fraud, misrepresentation, or overreaching on the part of Plaintiff when entering into the Agreement. Finally, enforcing the forum selection clause would not be unreasonable or unjust.

"A finding of unreasonableness or injustice must be based on more than mere inconvenience to the party seeking to avoid the requirements of the forum selection clause." *Id*. at 722. "It must instead appear that "enforcement in Ohio would be 'manifestly and gravely inconvenient' to the party seeking to avoid enforcement such that it will 'effectively be deprived of a meaningful day in court.'" *Id*. (quoting *Info. Leasing Co. v. Jaskot*, 151 Ohio App.3d 546, 784 N.E.2d 1192, 1195–96 (Ohio Ct. App.2003)).

At most, Growth Solutions argues that it will be inconvenienced by litigation in Ohio because evidence and witnesses will be in Maryland.  Although the Court agrees that some evidence and witnesses may likely be in Maryland, there will also likely be evidence and witnesses in Ohio given Plaintiff is in Ohio.  With mere inconvenience being Defendants' only argument, Defendants have not carried their 'heavy burden' of showing that enforcing this forum selection clause would be unjust or unreasonable." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009).

Accordingly, Growth Solutions has waived any dispute over personal jurisdiction.

However, <u>even if</u> Growth Solutions did not contractually concede to personal jurisdiction in the Southern District of Ohio, personal jurisdiction is still proper under Ohio's long-arm and due process.

### C.    Ohio's Long-Arm & Due Process

Because Growth Solutions contends it is not bound by the forum selection clause, Growth Solutions' personal jurisdiction argument is based on whether this Court may exercise personal jurisdiction under Ohio's long-arm statute and Federal Due Process.

To exert personal jurisdiction over a non-resident defendant, the forum's long-arm statute must be satisfied <u>and</u> the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice under the Due Process Clause. *See Tharo Sys., Inc. v. cab Produkttechnik GmbH & Co. KG*, 196 Fed. App'x 366, 369 (6th Cir. 2006) (quoting *Neogen*, 282 F.3d at 888). "Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445–47 (1952)).

First, Growth Solutions' actions are within the scope of Ohio's long-arm statute. Ohio Rev. Code. § 2307.382. Pursuant to this statute:

> (A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;

*Id*. at § 2307.382(A)(6). "[S]ubsection (6) [is] a provision that courts in this circuit have generally interpreted broadly." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 480 (6th Cir. 2015) (citing *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012)).

At a minimum, Plaintiff made a *prima facie* showing that Growth Solutions caused a tortious injury outside of Ohio when Growth Solutions "might reasonably have expected" Plaintiff would be injured in Ohio. *Id.* At a minimum, Growth Solutions concedes that Plaintiff has stated a claim against it for trademark infringement and unfair competition. Further, Plaintiff's affidavit in support of jurisdiction states that Plaintiff advised, supported, and communicated with Kelly and Growth Solutions when setting up the Franchise. (Doc. 8-1 at ¶ 9). Thus, Plaintiff has made a *prima facie* showing that Growth Solutions' actions in Maryland caused tortious injury in Ohio and that Growth Solutions should have reasonably expected its actions would cause Plaintiff such injury.

Second, exerting personal jurisdiction over Growth Solutions comports with Federal Due Process. The Sixth Circuit has "recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits," and has "consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice'" when analyzing the propriety of personal jurisdiction under Ohio's long-arm statute. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Thus, the Sixth Circuit uses a three-part test to determine whether personal jurisdiction under Ohio's long-arm statute satisfies due process requirements. *See, e.g., Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012). First, the defendant must purposely avail themself of the privilege of acting in Ohio or causing a consequence in Ohio. *Id.* Second, the cause of action must arise from the defendant's activities in Ohio.

*Id*. Finally, the acts of or consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. *Id*.

The first element "ensures that the defendant's actions create a 'substantial connection' to the forum state, such that the defendant 'should reasonably anticipate being haled into court there.'" *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 471–72 (6th Cir. 2012) (quoting *Neogen*, 282 F.3d at 889). In this case, given Growth Solutions' connections to Kelly and the allegations in the Amended Complaint, as discussed, *supra*, Growth Solutions should have reasonably anticipated being haled into court in Ohio.

The second element is also present. The claims in this case against Growth Solutions alleging, among other things, trademark infringement and unfair competition, are clearly intimately connected with Growth Solutions' alleged contacts with Ohio. Specifically, Plaintiff alleges that Growth Solutions has been branding a "Strategic Mindset program" to customers. (Doc. 8-1 at ¶ 10–11). One of Plaintiff's propriety and trademarked business methods is the "Strategic Mindset® process." (*Id*. at ¶ 8). Kelly, allegedly on behalf of himself and as sole member of Growth Solutions, attended a franchisee training in Cincinnati, Ohio as part of the Agreement, learning about, among other things, the "Strategic Mindset® process." (*Id*). Accordingly, Plaintiff has made a *prima facie* showing that the claims against Growth Solutions arose out of Kelly and Growth Solutions' contacts with Ohio.

Concerning the third element, "[s]everal factors are relevant to the reasonableness inquiry, 'including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Bird*, 289 F.3d at 875 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) ). Furthermore, "[a]n inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (quoting *CompuServe*, 89 F.3d at 1268). The Court sees no reason to deviate from that inference in this case.

Accordingly, the exercise of specific personal jurisdiction over Growth Solutions is appropriate pursuant to Ohio's long-arm statute and Federal Due Process, <u>and</u> pursuant to the forum selection clause in the Agreement, as discussed, *supra*.

Growth Solutions' motion to dismiss for lack of personal jurisdiction is **DENIED**.

### D.    Venue

Venue is also waived and proper in this district. *See See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) (absent extraordinary circumstances, a valid forum selection clause should be given controlling weight). In *Atl. Marine*, the Supreme Court set out a three part test to determine whether a motion to transfer venue should be granted in the face of a forum selection clause: (1) the party defying the forum selection clause must establish that the bargained-for forum is unwarranted; (2) whether public-interests only, not private interests of the parties, is best served by transfer; and (3) how choice-of-law rules may affect public-interest considerations. *Id*. at 62–66.

Again, in this case, Growth Solutions only argues its private interests – *e.g.*, convenience of parties and Growth Solutions' witnesses, location of evidence, *etc*. (Doc. 6 at 19–20). Growth Solutions has not met its burden of demonstrating that this venue is unwarranted in the face of a valid forum selection clause.

Accordingly, Growth Solutions' motion to dismiss for improper venue, or, alternatively, to transfer to the District of Maryland, is **DENIED**.

## IV. FAILURE TO STATE A CLAIM

To reiterate, Plaintiff brings eleven causes of action against Kelly and Growth Solutions: (1) breach-of-contract; (2) fraud; (3) failure to comply with in-term covenants against competition; (4) unjust enrichment; (5) failure to comply with confidentiality restrictions under the agreement; (6) accounting, (7) trademark infringement, (8) unfair competition; (9) refusal to comply with territorial restrictions under the franchise agreement; (10) personal guaranty; and (11) declaratory judgment. (Doc. 7).

In the motion to dismiss, Growth Solutions argues that Plaintiff fails to state a claim against it for all claims, <u>except</u> trademark infringement and unfair competition. (Doc. 6 at 10–16). Kelly argues Plaintiff fails to state a claim against him for fraud, unjust enrichment, accounting, personal guaranty, and declaratory judgment. (*Id*.).[3]

---

[3] As an initial matter, much of the parties' briefing related to Defendants' 12(b)(6) motion is argued in a skeletal and conclusory manner as to why specific claims in the Amended Complaint should or should not be dismissed for failure to state a claim. Based on this, <u>the Court could decline to consider these arguments</u>. *Brook v. sanofi-aventis U.S., LLC*, No. 2:14-CV-976, 2014 WL 7272243, at *2 (S.D. Ohio Dec. 18, 2014) ("This essentially perfunctory method of briefing fails to constitute developed arguments that this Court will consider adequately presented for disposition.") (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013); *Embassy Realty Investments, Inc. v. City of Cleveland*, 976 F.Supp.2d 931, 944 (N.D. Ohio 2013)). Nevertheless, the Court will consider Defendants' motion to dismiss for failure to state a claim.

A.  **Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,'...it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere

15

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed.  *Id.* (citing Fed. Rule Civ. P. 8(a)(2)).

### B.      Contract Claims Related to Growth Solutions – Counts 1, 3, 5, and 9

Growth Solutions argues that Plaintiff fails to state a claim against it on Counts 1, 3, 5, and 9 because those claims "depend on the existence of a contract to which Growth Solutions is not a party, or depend on duties that exist only under a contract to which Growth Solutions is not a party."  (Doc. 6 at 10–16).  Both Growth Solutions and Plaintiff reference their forum selection clause arguments to support why the Agreement does or does not apply to Growth Solutions.  (Doc. 6 at 10–11; Doc. 8 at 14; Doc. 10 at 11–12).  The Court has addressed these arguments, *supra*.  *See* Sec. III(A).

Accordingly, at this stage in the proceedings, the Court cannot conclude that Growth Solutions is not bound by the Agreement.  Growth Solutions' motion to dismiss Counts 1, 3, 5, and 9 is **DENIED**.

### C.      Fraud – Count 2

Both Growth Solutions and Kelly move to dismiss Plaintiff's fraud claim. Plaintiff concedes in its opposition that this claim should be dismissed as to Kelly.

(Doc. 8 at 15).  Thus, the claim against Kelly will be dismissed.

Growth Solutions argues Plaintiff fails to state a fraud claim because, since Growth Solutions is not a party to the Agreement, Growth Solutions had no duty to disclose information to Plaintiff.  "Generally, under Ohio Law a tort claim such as fraud cannot duplicate a breach of contract claim in its factual and legal basis." *Cunningham Prop. Mgmt. Tr. v. Ascent Res. Utica, LLC*, 351 F. Supp. 3d 1056, 1067 (S.D. Ohio 2018) (citing *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005-Ohio-4931, 2005 WL 2292800 (Ohio Ct. App. 2005)).  "'A tort claim based upon the same actions [as] those upon which a claim [for] contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract.'"  *Id*. (quoting *Telxon*, 2005-Ohio-4931 at ¶ 34).

At this stage in the proceedings, based on the well-pled allegations in the Amended Complaint, Growth Solutions may be a bound by the Agreement and may also owe a duty to Plaintiff separate and distinct from those duties created under the Agreement.  "Dismissal of the fraud claim is therefore premature.  Of course, should [Plaintiff] ultimately prevail on [its] fraud claim, [Plaintiff's] recoverable damages would be limited to those separate and distinct from any damages awarded on [its] breach of contract claim."  *Id*. (quotation omitted).

Accordingly, Kelly's motion to dismiss Plaintiff's fraud claim is **GRANTED**.  Growth Solutions' motion to dismiss the fraud claim is **DENIED**.

### D.     Unjust Enrichment – Count 4

Kelly contends that Plaintiff fails to state a claim for unjust enrichment because there exists a valid contract, and Growth Solutions argues that it cannot be held liable for Kelly's unjust enrichment because it was not part of the Agreement. (Doc. 6 at 13–14). As discussed, Growth Solutions is not entitled to dismissal of the breach-of-contract claim because, based on the allegations, Growth Solutions may be a party.

Moreover, unjust enrichment may be pled as a permissible alternative to a breach-of-contract claim when the scope of the parties' agreement remains to be developed during discovery. *See, e.g., FedEx Corp. Servs., Inc. v. Heat Surge, LLC*, 2019-Ohio-217, ¶ 19, 131 N.E.3d 397, 402 (quoting *Building Industry Consultants, Inc. v. 3M Parkway, Inc.,* 182 Ohio App.3d 39, 2009-Ohio-1910, 911 N.E.2d 356, ¶ 17 (9th Dist.)) ("'While it is true that a party may not recover for the same services under both a contractual claim and a claim for quantum meruit, a party is not barred from seeking alternative theories and recovering under a quantum meruit theory if his contractual claim fails'"). *See also Highman v. Gulfport Energy Corp.*, No. 2:20-CV-1056, 2020 WL 6204344, at *3 (S.D. Ohio Oct. 22, 2020) (discussing alternative unjust enrichment pleading in the face of a contract under Ohio law).

Here, Growth Solutions disputes whether the Agreement is valid and binding. Moreover, Kelly, although recognizing that he is a party to an express contract, disputes the scope of the Agreement. (*See, e.g.,* Doc. 6 at 14–15). At this stage, it would be premature to dismiss Plaintiff's unjust enrichment claim because the scope and validity of the Agreement "remain[s] to be developed in discovery." *Id*. (citations omitted).

Accordingly, Kelly and Growth Solutions' motion to dismiss Count 4 is **DENIED**.

### E.      Accounting – Count 6

In its Amended Complaint, Plaintiff alleges that it needs complete accounting of all revenues received by Defendants to ascertain its damages.  (Doc. 7 at ¶ 79).  Both Defendants move to dismiss this claim, arguing accounting is not cause of action, but an equitable remedy.  (Doc. 6 at 14; Doc. 10 at 15–17).  Plaintiff argues that accounting may be grounded in equity, but it also may be an action in law; thus, Plaintiff's claim should not be dismissed at this stage in the proceedings.  (Doc. 8 at 16).

Under Ohio law, accounting is an equitable remedy that is improper <u>when there is an adequate remedy at law</u>.  *Highman*, 2020 WL 6204344 at *4 (applying Ohio law) (citing *Cunningham*, 351 F. Supp. 3d at 1064; *McNulty v. PLS Acq. Corp.*, 2002-Ohio-7220, ¶ 80, 2002 WL 31875200 (Ohio Ct. App. Dec. 26, 2002)).

At a minimum, Kelly and Growth Solutions acknowledge that Plaintiff has properly pled trademark infringement and unfair competition claims.  Thus, Plaintiff would be entitled to much, if not all, of the information it seeks to ascertain damages in discovery.  However, given the stage of the proceedings, the Court cannot say whether Plaintiff can prove any of its claims and whether Plaintiff has an adequate remedy at law.  Dismissal of Plaintiff's accounting claim is premature.

Accordingly, Kelly and Growth Solutions' motion to dismiss Count 6 is **DENIED**.

### F.      Personal Guaranty – Count 10

Count 10 is only alleged against Kelly.  (Doc. 7 at ¶¶ 103–05).  Kelly contends that this claim should be dismissed because the personal guaranty is part of the Agreement; thus, this claim is simply duplicative of Plaintiff's breach-of-contract claim

and must be dismissed.  (Doc. 6 at 14; Doc. 10 at 17).  Plaintiff argues that this claim is not duplicative because the claim alleges Kelly assigned rights under the Agreement to Growth Solutions, and Kelly, individually, owes a duty under the personal guaranty. (Doc. 8 at 16–17).  Alternatively, duplication is not cause for dismissal.  (*Id.*).  Neither party asserts any case law in support of their arguments.

Based on briefing, the parties dispute the applicability and scope of the personal guaranty.  It is unclear on its face whether this claim is duplicative of the breach-of-contract claim.  Moreover, it is interesting that Kelly would seek to dismiss this claim as duplicative of the breach-of-contract claim, but not seek the same for other claims asserting relief based on Defendants' alleged breach of the Agreement.  (*See* Counts 3, 5, 9).  At this premature stage, and given the parties' factual dispute over the extent of the personal guaranty, Plaintiff's personal guaranty claim is plausible on its face.

Accordingly, Kelly's motion to dismiss Count 10 is **DENIED**.

### G.    Declaratory Judgment – Count 11

Plaintiff's final claim is for declaratory judgment and injunctive relief.  Plaintiff alleges that, under the Agreement, it is entitled to: (1) client lists and data obtained by Defendants in conjunction with the franchise; (2) ownership of websites used by Defendants when operating the franchise; (3) all other improvements development by or acquired by Defendants when furthering the franchise; and (4) all other materials developed by Defendants for use in the franchise.  (Doc. 7 at 107–17).

Growth Solutions argues that it is not a party to the Agreement; thus, Plaintiff cannot state an "actual controversy" against it based on the Agreement as required by the

20

Declaratory Judgement Act, 28 U.S.C. § 2201. (Doc. 6 at 14–15). Kelly limits Plaintiff's declaratory judgment claim to Plaintiff's claim for the websites; thus, Kelly argues Plaintiff cannot state an "actual controversy" against him because the websites belong to Growth Solutions. (*Id.* at 15–16). No party cites any law (other than the Declaratory Judgment Act statute) in support of their positions.

As previously addressed, the Court cannot, at this premature stage in the proceedings, find that Growth Solutions is not a party to the Agreement. Moreover, Kelly's limited reading of the Amended Complaint is in error. Although Plaintiff discusses the websites, it also seeks relief for client lists and data, other improvements, and other materials as defined by the Agreement. Thus, like many of the other claims discussed, the parties argue a factual dispute over: (1) the extent Growth Solutions is the franchisee and bound by the Agreement; and (2) the breadth and scope of the Agreement. These determinations are improper at the motion to dismiss stage when the Court is construing all plausible allegations in light most favorable to the plaintiff. Therefore, Plaintiff plausibly states an "actual controversy" against Growth Solutions and Kelly.

Accordingly, Defendants' motion to dismiss Count 11 is **DENIED**.

## V. CONCLUSION

Based upon the foregoing, Defendants David Kelly and Growth Solutions, LLC's motion to dismiss for lack of personal jurisdiction, for failure to state a claim, and/or for improper venue, or, alternatively, motion to transfer venue (Doc. 6) is **DENIED …** <u>except for</u> Defendant Kelly's motion to dismiss Plaintiff's fraud claim.

That is, Defendant Kelly's motion to dismiss for failure to state a fraud claim (Count II)

is **GRANTED**.

        **IT IS SO ORDERED.**

Date:   _3/31/2021_____                        _s/Timothy S. Black_____
                                                    Timothy S. Black
                                                      United States District Judge